The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.



Dated: March 2 2016

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 07-31907 |
| | ) | |
| Gregory B. Segura and | ) | Chapter 7 |
| Angela H. Segura, | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION REGARDING MOTION TO REOPEN

This case is before the court on the Chapter 7 Trustee's Motion to Reopen [Doc. # 24] and Debtors' objection [Doc. # 25]. The Trustee seeks to reopen Debtors' Chapter 7 case in order to administer proceeds of a settlement in a mass tort class action suit. The court held a hearing on the motion that Debtors, their counsel and the Trustee attended in person and at which the parties presented testimony and other evidence in support of their respective positions. Having considered the arguments of counsel and having reviewed the record in this case, for the reasons that follow, the court will deny the Motion to Reopen.

### BACKGROUND

The following facts are not in dispute. Debtors filed a Chapter 7 petition on May 9, 2007, and reported no claim or cause of action as an asset on their bankruptcy schedules. The Trustee filed a no asset report and Debtors received a discharge on September 5, 2007. [Doc. ## 19, 20]. The Clerk administratively closed this case on September 12, 2007.

Prior to filing their case, Angela Segura had been experiencing pain and underwent surgery on April

07-31907-maw    Doc 33    FILED 03/02/16    ENTERED 03/02/16 11:02:55    Page 1 of 5

10, 2006. The surgery included a pelvic mesh product being implanted to effect a bowel and bladder suspension. Ms. Segura was pain free thereafter for several years. However, some time postpetition, she began experiencing pain, which she eventually learned in 2012 was the result of the pelvic mesh eroding. This required her to undergo surgery for removal of the pelvic mesh product. Ms. Segura testified that all of the mesh could not be removed and that she must undergo another surgery to do so.

In November 2012, Debtors retained counsel to pursue claims for damages incurred as a result of the pelvic mesh erosion. Debtors were both plaintiffs in the American Medical Systems, Inc., Pelvic Repair System Products Liability Litigation, Multidistrict Litigation ("MDL") No. 2325. [Trustee Ex. B]. Claims asserted in that litigation include negligence, strict product liability claims based upon design defect, manufacturing defect, and failure to warn, and claims of breach of express and implied warranty, fraudulent concealment, constructive fraud, negligent misrepresentation, negligent infliction of emotional distress, gross negligence, unjust enrichment, and loss of consortium.

By letter dated August 5, 2015, the Trustee was informed by Debtors' counsel in the MDL litigation that Ms. Segura has received a settlement offer that she had indicated a desire to accept. [Doc. # 25, Ex. A]. The settlement offer will provide a recovery of $88,303.10 after deducting litigation costs and attorney fees and before deduction for healthcare expenses constituting liens against any recovery. [Trustee Ex. C]. On September 21, 2015, the Trustee moved to reopen Debtors' bankruptcy case for the purpose of administering the settlement proceeds for the benefit of the unsecured creditors of the bankruptcy estate.

## LAW AND ANALYSIS

Section 350 of the Bankruptcy Code provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). A decision to reopen a case is committed to the sound discretion of the court. *In re Kapsin*, 265 B.R. 778, 780 (Bankr. N.D. Ohio 2001). The reopening of a case, by itself, affords no independent relief, but merely gives a bankruptcy court the opportunity to act on a substantive request for relief. *In re Kirksey*, 433 B.R. 46, 48 (Bankr. D. Colo. 2010). However, where the court cannot afford the moving party the requested relief, the court does not abuse its discretion in refusing to reopen the case. *Id.* at 48-49 (citing *In re Schicke*, 290 B.R. 792, 798 (B.A.P. 10th Cir. 2003)).

Generally reopening of a case is a ministerial act. However, in this case, the only purpose in reopening is to administer an asset, which Debtors contend is not an asset of the bankruptcy estate. The court thus addresses the issue of whether Debtors' claims for damages in connection with the pelvic mesh

2

product constitute prepetition causes of action such that the Trustee would be entitled to administer the settlement proceeds at issue or postpetition causes of action that belong to Debtors such that reopening the case would serve no purpose. *See Underhill v. Huntington Nat'l Bank*, 579 Fed. Appx. 480, 482 (6th Cir. 2014) ("Pre-petition causes of action belong to the bankruptcy estate and post-petition actions belong to the debtor."). Debtors argue that their MDL litigation causes of action are not assets of the bankruptcy estate since they experienced no injury until well after their petition was filed. The court agrees.

The Bankruptcy Code defines "property of the estate" to include "all legal and equitable interests of the debtor in property *as of the commencement of the case*," and "[a]ny interest in property that the *estate* acquires after the commencement of the case." 11 U.S.C. § 541(a)(1) & (7) (emphasis added). Although federal bankruptcy law determines when a debtor's property interest becomes property of the estate under § 541, the "underlying substantive law" determines the nature and extent of the debtor's property rights. *Tyler v. DH Capital Mgmt., Inc.*, 736 F.3d 455, 461 (6th Cir. 2013); *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992) ("In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law."); *Butner v. United States*, 440 U.S. 48, 54 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law"). As one court observed, "[t]his is as true for causes of action as it is for cars or televisions." *In re Holstein*, 321 B.R. 229, 234 (Bankr. N.D. Ill. 2005).

In *Segal v. Rochelle*, 382 U.S. 375 (1966), the United States Supreme Court discussed the scope of "property of the estate" under the Bankruptcy Act. The Supreme Court found that a loss-carryback income tax refund was property of the estate because it was "sufficiently rooted in the pre-bankruptcy past. . . ." *Id.* at 380. In so finding, the Court explained that the predicates for receiving the refunds occurred prepetition: taxes had been paid on net income within the past three years and a net operating loss for the year at the point bankruptcy was filed. *Id.* Thus, the debtors "apparently would have deserved an immediate refund had their tax year terminated on that date." *Id.* at 381. Although debtors could not claim the refund until the end of the year, the Court explained that "postponed enjoyment does not disqualify an interest as 'property.'" *Id.* at 380. And although postpetition earnings by the debtors could diminish or eliminate the loss-carryback refund claim, the Court explained that such contingency simply "qualifies the debtors' interest" but does not eliminate the interest that existed at the time of filing. *Id.*

Since *Segal,* courts, including the Sixth Circuit Court of Appeals, analyze whether an asset received by a debtor postpetition is "sufficiently rooted in the pre-bankruptcy past" of the debtor such that it should

3

be regarded as property of the bankruptcy estate. *Tyler*, 736 F.3d at 461 (citing cases). In *Tyler,* the Sixth Circuit set forth certain principles in applying this test. First, "pre-petition conduct or facts alone will not 'root' a claim in the past; there must be a pre-petition violation." *Id.* at 462. Second, "all causes of action that hypothetically could have been brought pre-petition are property of the estate. . . even if the debtor was unaware of the claim." *Id.* And third, "the entire cause of action is property of the estate, even if further post-petition damages were incurred." *Id.* In determining whether the debtor's cause of action under the Fair Debt Collection Practices Act ("FDCPA"), which was based upon a creditor's complaint filed against him, was property of the debtor's bankruptcy estate, the *Tyler* court rejected the debtor's argument that his claim did not accrue until he was served with the complaint. The court explained that "the relevant bankruptcy law question is when is the claim minimally actionable" and that the violation occurred at the filing of the complaint because such filing may cause actual harm to the debtor as it is a red flag to the debtor's other creditors and can be used to coerce payment of the debt without serving the complaint. *Id.* at 464. Because the court found that the FDCPA claim was viable at the time the complaint was filed, it declined to answer whether a cause of action, one or more of whose elements have not been satisfied at the time the petition is filed, may become prepetition property. *Id.* at 463, 464 n.5.

In *Underhill v. Huntington National Bank (In re Underhill)*, 579 Fed. Appx. 480 (6th Cir. 2014), the Sixth Circuit Court of Appeals again addressed *Segal's* "sufficiently rooted" test. It held that the proceeds of a settlement of a claim for tortious interference with contract was not sufficiently rooted in the debtors' prepetition past to become property of their bankruptcy estate. *In re Underhill*, 579 Fed. Appx. at 482-83. A competitor had lodged complaints prepetition with a supplier for the debtors' business that culminated in its request postpetition that the supplier sever ties with the business. *Id.* at 481. Although the harm to the debtors' business occurred postpetition, the bankruptcy court had found the debtors' cause of action was sufficiently rooted in their prebankruptcy past because events relating or giving rise to the claim occurred prepetition. *Id.* at 481. The Bankruptcy Appellate Panel affirmed. The Court of Appeals reversed, holding that "a cause of action qualifies as bankruptcy estate property only if the claimant suffered a prepetition injury," and the record lacked evidence of a prepetition violation or injury. *Id.* at 482. The Court of Appeals was unpersuaded by cases cited for the proposition that "the accrual date does not control whether a cause of action constitutes property of the estate," stating that "none of these cases . . . concerned a cause of action unsupported by a pre-petition legal injury." *Id.* at 483.

Applying the forgoing principles to the facts in this case, the court finds that Debtors' causes of

action based upon injuries resulting from the use of the pelvic mesh product are not sufficiently rooted in their prebankruptcy past to be considered assets of their bankruptcy estate. The pelvic mesh product was implanted in Angela Segura prepetition. But she credibly testified that she experienced no injury, that is, no harmful effect, resulting therefrom until well after Debtors' petition had been filed. Nevertheless, the Trustee contends that Ms. Segura's injury is the implantation of the defective product itself and thus that her injury occurred prepetition. The court disagrees. "In any product liability case, whether based in common law or statute, a plaintiff must prove that the product defect proximately caused [her] injury." *See, e.g. Eastman v. Stanley Works*, 180 Ohio App. 3d 844, 859 (2009). Thus, in order to have an interest in a product liability cause of action, "injury" requires more than simply being exposed to a defective product or, as in this case, having a defective product implanted in the body. It must also cause some injury. Although Ms. Segura testified that the pelvic mesh eroded and that the erosion is the cause of her injuries, there is no evidence that the erosion began at the time the pelvic mesh was implanted and no evidence of the cause of the erosion or that it was inevitable at the time it was implanted. On the evidence before it, the court finds that Ms. Segura's injuries, and thus any injury incurred by Gregory Segura with respect to his derivative consortium claim, occurred postpetition at or around the time that Ms. Segura began experiencing pain.

Unlike the facts in *Segal,* a critical predicate for Debtors' causes of action, namely, injury proximately caused by the pelvic mesh, did not exist prepetition. It is not enough that the causes of action have some root in prepetition conduct or facts, they must be "sufficiently" rooted. *See Segal*, 382 U.S. at 380. As in *Underhill,* without proof of a prepetition injury, the court finds that Debtors' causes of action are not "sufficiently rooted" in their prebankruptcy past and, thus, are not assets of Debtors' bankruptcy estate. Accordingly, the proceeds of the MDL litigation to which Debtors may be entitled are not bankruptcy assets that may be administered by the Trustee. Because reopening the case will thus serve no purpose, the Trustee's Motion will be denied.

The court will enter a separate order in accordance with this Memorandum of Decision.

###